[No. 4172.]

## WOOD v. YANT ET AL.

1. EVIDENCE—*Judicial Notice* taken that where land and water are united in use, the value of the land is often spoken of, and intended to be understood, as including the value of both. (194.)

2. REPRESENTATION TO OBTAIN CREDIT—*Construed.* Husband and wife, to obtain credit at a bank, made and delivered what was therein described as "A true and correct statement of all their assets and liabilities." Among

other items was set down a farm of 160 acres in Otero County, valued at $12,000. Certain shares in the stock of an irrigating company were standing in the name of the wife, and by means of this holding water was obtained for the irrigation of the land. The shares were not expressly mentioned in the statement. The lands without water were of little value. On the face of this statement the bank advanced money to the two, on the individual note of the husband, and the money was checked out by both husband and wife at pleasure. *Held*, that the shares in the irrigating company were intended to be included in the statement, and were liable to the execution of the bank, issued upon a judgment recovered against the husband alone for the loan. (191-195.)

3. HUSBAND AND WIFE—*Wife's Separate Property* is subject to the husband's debts where, with her knowledge and consent, he is permitted to deal with it as his own, and thereby obtain credit. (197.)

4. EXECUTION SALE—*What Is Acquired by the Purchaser.* Where the circumstances are such that a judgment creditor is entitled to subject particular chattels to execution for the satisfaction of his judgment, any purchaser at the execution sale succeeds to this right. (195.)

5. CORPORATION—*Execution Sale of Shares—Effect.* It seems that one who purchases the shares of a stockholder at a valid execution sale thereof, may, by application to a court of equity, the stockholder being impleaded, require the corporation to transfer the shares to him, upon its books, though the former stockholder retains the original certificate.

*Error to Otero District Court.* HON. J. E. RIZER, Judge.

Mr. A. B. WALLIS and Messrs. THOMAS & THOMAS, for plaintiff in error.

Mr. GEORGE A. KILGORE and Mr. FRED A. SABIN, for defendants in error.

BELL, J.

Early in 1911, plaintiff in error, with her husband, Will. S. Wood, and daughter, Armelda, resided on a ranch near Fowler, Colo. Both she and her husband carried separate accounts with the Fowler State Bank, and borrowed money from said bank on their joint and individual notes. Checks were drawn against both of the accounts by each of the parties, and some were drawn against the account of Minnie P. Wood by her daughter, Armelda, all

of which checks were paid, without objection from either Minnie P. or Will. S. Wood, in the usual course of business. On or about May 26th, 1912, Will. S. Wood was indebted to said bank in the neighborhood of some $750, and applied for a further loan of from $2000 to $2500. Before making said loan, the bank asked for and obtained a property or financial statement, signed by Will. S. and Minnie P. Wood, in words and figures as follows:

"To Fowler State Bank, Fowler, Colo.:

"For the purpose of establishing credit from time to time with you for money borrowed or otherwise, the undersigned furnish the following statement as being a true and correct statement of all their assets and liabilities on the 26th day of May, 1912. Upon the faith of such statement you can rely in loaning money to them.

"ASSETS.

"Real Estate (Give detailed description, location and value): 252 acre farm in Fayette and Highland County, Ohio, for which we refused a cash offer of $32,000.00; 160 acre farm in Otero County, Colo., valued at $12,000.00; 16 houses in Cripple Creek, probably worth $10,000.00.

"Live Stock (Give number, age, sex, value and location): About 50 mares and colts, value about $2,000.00; other live stock, cows, calves and hogs, about $500.00.

"Personal Property: 12 houses, furnished, value $500.00.

"Total assets, $54,000.00.

"LIABILITIES.

"Encumbrance on Real Estate, $9,000.00.

"To whom, when due and rate of interest? Northwetsern Mut. Life Ins. Co.; due in 1916; interest 6½ per cent.

"Encumbrance on Live Stock? None.

"To whom, when due and rate of interest..........?

"Other borrowed money, Fowler State Bank, about $750.00.

"To whom and when due..............?

"Other liabilities:   Undue accounts, $200.00; unpaid taxes, about $500.00.

"Total liabilities, $9,950.00.

"Are you endorser or surety on any note or other obligation?  No.

"If so, indicate amounts and for whom. ............

"Do you hold good title in and to the above described real estate, and is it in your name?  Yes.

"If not, in whom is the title vested? ..............

(Signed)          "Will S. Wood,

"Minnie P. Wood.

"Date signed, May 26, 1912."

Upon the strength of this statement the bank made loans from time to time, amounting to the sum of $2,100, which were secured by the individual notes of Will S. Wood, entered to the credit of Minnie P. or Will S. Wood, and checked against by both Will S. and Minnie P. Wood, and also by their daughter, signing "Minnie P. Wood by Armelda Wood."  All of these checks were also paid and cancelled in the usual course of business, the pass book of the account balanced and returned with the cancelled checks, according to the testimony of the president of the bank, to the owner.  When the notes securing said loans became due, the president of the bank was in possession of information to the effect that the property mentioned in the statement was in the name of Minnie P. Wood, and that apparently Will S. Wood had no right or title thereto.  He therefore insisted that Minnie P. Wood should join in a note to renew the loans, and upon her refusal to do so the bank caused judgment to be entered upon the notes of Will S. Wood, had execution issued thereon, by virtue of which defendant in error, as Sheriff of Otero County, levied upon certain property, including certain lands containing about 160 acres in Otero County, and standing upon the records of said county in the name of Minnie P. Wood, and also 5 shares

of stock of The Rocky Ford Canal, Reservoir, Land, Loan and Trust Company, the water secured by which was applied to the irrigation of the land above mentioned, which shares of stock were entered upon the books of the company in the name of Minnie P. Wood, evidenced by certificate of stock No. 2052 held by her, and offered for sale by said sheriff under said execution. After levy and before sale plaintiff in error filed her complaint in the instant case, alleging that she was the sole owner of the land and stock levied upon, and praying for a temporary and permanent injunction restraining said sheriff from selling or conveying said stock so levied upon and offered for sale by him. The temporary injunction was denied, and said stock was sold to Martin Eder for the sum of $2,850, which was applied to the payment of the judgment against said Will S. Wood and the attendant interest, costs and expenses, leaving a balance of $143.48, which was tendered to, and refused by, Will S. Wood, the defendant in the execution. Upon the issue to him of the certificate of purchase of said stock, said Martin Eder presented the same to said The Rocky Ford Canal, Reservoir, Land and Loan Company, and demanded that said stock be transferred to him on the books of the company. This the company refused to do, for the reason that said stock stood in the name of Minnie P. Wood, who retained the certificate for same, and he thereupon filed his petition in intervention to the complaint of the plaintiff in error, wherein he sets up the transactions of said Minnie P. and Will S. Wood with The Fowler State Bank, and alleges that she, the said Minnie P. Wood, by reason of the representations made by her in the property or financial statement hereinbefore quoted, is estopped from asserting any title to the shares of stock in controversy. The trial court found the issues in favor of the intervenor, Martin Eder, and denied any right of Minnie P. Wood to said stock, as against his claim under his certificate of purchase.

Plaintiff in error insists that said stock was not specifically listed in the property or financial statement, and was not included therein. It is true the stock is not specifically mentioned in the statement, but whether it is really included, and intended so to be, was a proper question of fact submitted to the trial court. The statement reads: "A true and correct statement of *all* their assets," and specifically mentions a 160-acre farm, to the irrigation of which the water secured by said stock was shown to have been applied. This farm is valued, in the statement, at $12,000, and it is a matter of common knowledge that where land and water are united in use, as they were in this case, the value of the land is often spoken of and intended to be understood as including the value of both. The statement also specifically sets forth that their *total* assets were of the value of $54,000, and particularizes their real estate holdings, their live stock and their personal property; and in view of such representations it is not at all probable that so important an item as the water stock should have been forgotten, as it was to their advantage to make as favorable a showing of their financial worth and responsibility as their means would permit, since the greater the showing, the greater and easier would be their extension of credit. There is no plausible reason shown in the abstract why this item should have been intentionally omitted from the financial statement, nor is it probable that it could have been so omitted without an endeavor on the part of the plaintiff in error and her husband to deceive the bank by falsifying their written statement, which purported to list *all* of their property, and upon the faith of which they intended it should rely. But even more direct and positive is the inference that the stock was intended to be included in the statement, acording to the testimony of Mr. R. B. Spruill, president of The Fowler State Bank. He testified, although contradicted, that when the statement was returned to him by Will S. Wood, he inquired of him as to

how much water he had with the farm, and was informed that he had six and one-half shares of Highline water. Further, plaintiff in error alleges, under oath, in her complaint that "said lands and premises the farm) would be of little value but for the water as aforesaid, which is applied to the land," and while the farm was valued at $12,000, it was shown that the stock in controversy, which secured the water so referred to by her, was sold at the sheriff's public sale for only $2,850.

These and other facts and circumstances were before the trial court in passing upon the question, and having met the witnesses face to face, it found on such evidence that "the said five shares of corporate stock were included and were intended to be included by the plaintiff in said credit statement in which the plaintiff represented that the property therein described included all of the property of the plaintiff and her said husband."

We think that this finding of the trial court has abundant evidence to support it, and therefore that it should not be disturbed.

Error is assigned, but not argued, to the admission and exclusion of certain testimony, but after a very careful examination of the record we are satisfied that the plaintiff in error was not, and could not be, prejudiced by the rulings of the trial court in these particulars

The only other question insistently pressed in argument by plaintiff's counsel is that there is not such a privity of interest existing between the judgment creditor, The Fowler State Bank, and the intervenor, Martin Eder, who purchased the water stock at the execution sale, as to entitle him to the relief he prays, even though an equitable estoppel might have been invoked by the judgment creditor, If the judgment creditor had the right to sell said stock for the satisfaction of its judgment, then any purchaser at the execution sale would have secured the same right, as a purchaser, that the judgment creditor, through the sheriff, had

to sell, as no principle of law or equity limits the right to purchase a good title to the judgment creditor alone.

The trial court found that the plaintiff, at the very threshold of this controversy, did not come into court with clean hands. The financial statement, signed by Will S. and Minnie P. Wood, and presented by them to The Fowler State Bank, showed that they together owned property of the value of $43,550 in excess of all their indebtedness. With such a showing the president and manager of the bank had every reason to believe that either or both of them had an abundance of unincumbered property sufficient to insure the satisfaction of all credits extended to Will S. Wood.

Counsel for plaintiff, in his written argument, states that

"There is no ambiguity about that property statement. On its face it purports to be given to establish joint credit at the bank. This was the purpose of Minnie P. Wood in signing the statement."

It is not so important to determine the undisclosed intention of Minnie P. Wood as it is to determine what probable effect her representations had on the mind of the president and manager of The Fowler State Bank, acting as a person of reasonable precaution, in extending the credits in controversy to Will S. Wood. The statement she signed and filed with the bank reads:

"For the purpose of establishing credit from time to time with you for money borrowed or otherwise, the undersigned (Will S. and Minnie P. Wood) furnish the following statement as being a true and correct statement of all their assets and liabilities on the 26th day of May, 1912. Upon the faith of such statement you can rely in loaning money to them."

After the money was advanced on the strength of such statement, it was placed to the joint credit of Will S. and Minnie P. Wood, and checked out by both of them at pleasure; but when the day of re-payment arrived, they came

into a court of equity and solemnly swore, notwithstanding their written statement to the contrary, that Will S. Wood had not then and never had any interest in the property that they represented, in their said signed statement to the bank, as the common property of both for the purpose of obtaining credit, and upon the strength of which Will S. Wood obtained the very money and credits in controversy herein.

It is a well established general rule, applicable alike in law and equity, that parties shall not be entitled to establish a claim, *or to enforce a defence,* by reason of acts or misrepresentations which proceeded from themselves, or were adopted or acquiesced in by them after full knowledge of their nature and quality; and, further, that where misrepresentations have been made by one of two litigating parties, in his dealings with the other, a court of law will either decline to interfere or will so adjust the equities between them as to prevent an undue benefit from accruing to that party who is unfairly endeavoring to take advantage of his own wrong. Broom's Legal Maxims, 7th Ed., 238.

A clear import of the financial statement is that the property listed therein was the common property of Will S. and Minnie P. Wood, who signed the same, and was a holding out of said property by Minnie P. Wood at the time the statement was signed, as the property, in part at least, of Will S. Wood, which she now says was her sole property. Such a holding out of property may make the same liable for advances secured thereon on the faith of such representations, to the extent that others were misled to their injury thereby while extending credit in good faith on the strength thereof. *Prewitt v. Lambert,* 19 Colo., 7-12, 34 Pac., 684.

A wife's separate property may become subject to the debts of her husband in case he be permitted to deal with it and obtain credit upon it as his own, and with her knowledge and consent. *De Votie et al. v. McGerr,* 15 Colo., 467, 24 Pac., 923, 22 Am. St., 426. And while this court feels

that other approved methods of procedure might have been adopted in this case, more appropriate to reach the relief sought than that followed herein, nevertheless, we are not able to say, from a review of the whole record, that the trial court was not authorized to decree that The Fowler Sate Bank was entitled to subject enough of the property mentioned in the financial statement, including the shares of water stock in controversy, to execution sale to re-pay the moneys and satisfy the credits obtained on the strength of said statement, and that the complaints and defenses made by the plaintiff, Minnie P. Wood, were without equity; hence, the decree of the trial court in the premises ought to be, and is, hereby affirmed.

*Affirmed.*